Good morning, Your Honor. May it please the Court, my name is Robert Barton. I'm appearing on behalf of the petitioner, Rohan Coombs, who was detained in federal immigration custody where he's been for the past five years. I'm reserving two minutes for rebuttal. As this Court knows from the briefs, Mr. Coombs is a veteran of the Marine Corps, served two decorated tours of duty in Kuwait before his discharge in 1994, and is now being deported on the basis of a removal conviction under Health and Safety Code 11-359. I think we know the facts. Does Coombs' argument under Padilla v. Kentucky survive the Chattis v. United States case? Yes, it does, Your Honor, for a couple of reasons. One, Mr. Coombs' conviction was not final as of the time of the decision. His conviction was December 2008. He was on parole for three years after his release, where he was supposed to be. So we would contend that, on the basis of the record, that he had until 2011, until the final. What do you mean by it was not final? Being on parole doesn't mean a conviction is not final. Well, he could still bring a quorum novus or a habeas petition in California Supreme Court to challenge it. But how is that meaning the conviction is not final? I mean, is there anything in Chattis that suggests that if you're still serving incarceration or still somehow under a sentence from a conviction, the door is open to challenge the conviction based on Padilla? Well, yes. What in Chattis supports that proposition? It says it's not retroactive. Exactly. Your conviction is final once all your direct appeals have been exhausted. You can attack it after that on collateral appeal. Usually you're imprisoned when you are. That doesn't mean you can use it to attack it collaterally on post-conviction relief. So how is being still under a sentence sufficient to make the original conviction not final? Yes, Chattis, that's the retroactivity of the Padilla case. But if Padilla wasn't – it didn't need to be retroactive for it to be applied, it wouldn't matter what makes your client's conviction not final. Continuing to serve a sentence doesn't make a conviction not final. What's the rule for what makes a conviction final? Yes, Your Honor. It's not final in the sense that he's still on the avenue of relief in the event that there was a constitutional deficiency with the conviction. He could have still filed a petition, a writ of habeas, with the California State Court. And the point, I think, of Chattis is that you can't challenge collaterally based on Padilla. Habeas corpus or quorum nobis, those are collateral challenges. I guess I would disagree, Your Honor. I don't think – So give me some authorities as to how that's not a collateral challenge. Chattis didn't say that they couldn't collaterally attack the – I'm going back to a more fundamental proposition. When is a conviction final? I would contend, Your Honor, it no longer has an ability to bring action to seek relief based on deficiencies from that. And what case would you cite as to support that proposition? Because there are a host of Supreme Court cases in the federal habeas arena to the contrary. That the conviction – basically those cases hold that the conviction is final, as Judge Clifton recited, when all direct appeals are exhausted. Yes, Your Honor. One case I would cite is Daniels v. United States, 532 U.S. 374. That doesn't speak directly to your point, but it does provide an avenue of relief for defendants where they – where no channel of review is available to a defendant with respect to a prior conviction. Well, that's true with regard to the ancient writ of quorum nobis, but that doesn't address, as you say, the finality of the conviction for purposes of this immigration proceeding. I mean, Chaidez itself involved somebody who had filed a petition for writ of quorum nobis. And what the Supreme Court said is that Padilla doesn't apply to permit that kind of attack. Right. But Chaidez also left open the door for other ineffective assistance, counsel claims, footnote 16 of the opinion, as well as page 1112 of the opinion. Affirmative misrepresentations by counsel. Has any – has any attack been made on your client's conviction based on ineffective assistance of counsel? Other than in this proceeding? Well, this is – you can't collaterally attack a conviction here. Has anything been filed in the state court to attack his conviction? Yes, Your Honor. He filed a writ of quorum nobis in 2011. That's when he found out that he was that writ of relief was not available to him because he was no longer in state custody or control. And that's kind of – Could he appeal that ruling by the – by the Superior Court? No, because, I mean, the – Why not? It's a Supreme Court decision. It would have been futile. The rule is if you're not in state custody and control, which he wasn't, you have no relief. Okay. And so that's the crux of the problem. So is he seeking to collaterally attack the validity of his state conviction here in these immigration proceedings? Yes, Your Honor. And are you aware of our case law that says you can't do that? Yes, I am aware of your – the case law. I guess the – Aren't we bound by it? You are. I would distinguish – distinguish it, though, on this basis. The crux of the problem is Mr. Coombs cannot bring a habeas petition, as the court has mentioned, to collaterally attack his conviction as a result of contracts. This court has also decided that in Ramirez v. Polando that he cannot use a petition for review to attack his conviction. That leaves the state court to collaterally attack his conviction. However, as we said, he was not able to do that because he was discharged from parole early. So we have a situation where Mr. Coombs has a Padilla claim, but has nowhere to assert it. And that's why I'm relying on – How can we as a three-judge panel do that? If there's direct Ninth Circuit authority that says he cannot collaterally attack his conviction, by what authority do we carve out an exception to an otherwise binding rule? Yes, Your Honor. That was my point with the exception that was set forth in Daniels, is that the court did acknowledge that there was an exception applicable to defendants who have no other avenue of relief. They did say it was a rare exception. I believe this qualifies as a rare case. Mr. Coombs' removal proceedings were initiated at the end of his state sentence and therefore was not able to bring Coram Novus. He didn't know he was a citizen until the removal proceedings were – Well, let's talk about that. How do you get around the case law that says that there are only two ways that one becomes a citizen, either by birth or by completing the naturalization process, which as I read the record, he did not do? If you're referring to the second issue that we've raised – I am. Yes. I believe that the – that issue has been fully briefed. We don't have anything to add, but I would say that he believed that he was a national – Do you want us to declare another exception to what I think is a binding rule that says you can only do it one of two ways? And he doesn't qualify for either. Well, Your Honor's point is well taken, but I would say that Mr. Coombs – the distinction here is Mr. Coombs believed that he was a citizen. He submitted a naturalization application. But one doesn't become a citizen because he subjectively wakes up one morning and declares himself to be a U.S. citizen. I understand, Your Honor, but you have to understand the circumstances that he was going through. He was deployed in Kuwait. That's why his immigration or naturalization application was not processed. I'm not seeking an exception on that basis, but just – I mean, that's the basis for his subjective belief that he was a citizen. But he has an extremely sympathetic case in certain ways, but for the conviction. But you're asking us not to follow our own precedent on so many levels. Well, as I said before, Your Honor, your point's well taken, but I do believe there is a way for the court to get there. I also believe that this case is – But we can't do it through the citizenship route, can we? No. As I understand your argument, the best that we could hope to do would be to articulate a new exception, relying on Daniels, to allow him to collaterally attack his state court conviction because there is no other way he can get at it at this point. Yeah, I mean, I wouldn't say it's not a new exception. It's established. It just hasn't been discussed. Recognized? Right. Well, I mean, it's been recognized by the Resdes v. Kavinsky 416F3D952, which was the basis for the court's decision in Ramirez v. Polando, which said you couldn't collaterally attack a conviction on petition for – F2nd or F3rd? F3rd. Do you want to save some time for rebuttal? Yes, Your Honor. And I would just say I believe this case would benefit from mediation. I understand it's a difficult case for the court, but the equities here strongly favor out-of-court resolution. Thank you. Thank you very much. Good morning. Good morning. May it please the Court, my name is Monica Anton, appearing on behalf of the Attorney General. I'd first like to clarify on the equities. Mr. Coombs was dishonorably discharged from the reins in 1994. The second time? The second time, correct. And that was actually on the basis of some drug convictions. While there's only one conviction in the record, so it may appear to be a sympathetic case, DHS is in fact aware of seven total drug-related convictions, and for that reason they would not exercise their discretion in this favor. So what I'm hearing you say is it's unlikely the government would be willing to mediate this case. That's right. And I checked with DHS, and their answer is no on discretion. And I'm not aware of any other potential settlement possibility. Is there any way for someone like Mr. Coombs to challenge an allegedly constitutionally defective underlying conviction under the circumstances like the one present here, that is, where the state refuses to hear his request because he's no longer in state custody? Does he have any options? Well, quorum nobis exists for that purpose, but quorum nobis is only to bring an error of fact. And it's really up to the California courts to decide if there is a way. People v. Shocor, which is a court of appeal case, says that they're not going to create a non-statutory motion to challenge convictions on the basis of pedia. Quorum nobis has been rejected. I heard on the radio this morning, not the most reliable of legal sources, that in fact the California Supreme Court has adopted its own version of pedia, apparently yesterday. And so I'll just comment, it may be that Mr. Coombs will want to check to see if there's anything for him there. I'm not aware of that, but perhaps. Well, I wouldn't have been except I was listening to the radio this morning. California has since, I believe, 1978 required the District Court to notify defendants that their convictions could have immigration consequences. District Court or Superior Court? Superior Court, I think you mean. Yes. That's what they call the court of first instance. Right. I was one of those, so I remember that. 1016, I think it is. 1016.15. So the idea that people can challenge their convictions on the basis of ineffective assistance of counsel is not entirely new. Pedia was only groundbreaking in its Sixth Amendment holding. But the practical effect is that people have been challenging their convictions for decades on the basis of ineffective assistance of counsel because of deportation consequences. So it's really up to the State of California to decide how it's going to apply pedia and how defendants can use pedia to attack a conviction that may have long been final. But the Department's position is that the ancient writ of quorum nobis is limited. Essentially, it's a fail-safe mechanism, as I understand it, for factual innocence. Is that right? Where all other habeas relief is unavailable. That's my reading of the California court's interpretation of quorum nobis, that it's only available for factual error. And People v. Kim specifically rejected pretty much all the arguments made in this case. But again, before pedia. So where are all these other convictions that you're talking about? Unfortunately, they're not in the record. DHS made me aware of them. They were filed in the bond hearing. Also, the government's return to the habeas petition includes a number of documents. But he did not appeal that habeas denial to this court. So the bond hearing would have occurred after the administrative record was closed in this proceeding? It did, yes. So are they convictions all out of the same? Are they separate convictions? Or are they all, like, a lot of times you have, you know, seven counts. Right. And it's all the same thing? They date back to 1992. I can submit the documents if you'd like. No, I don't think we can consider it. They really only pertain to the issue of discretion. So not to the legal issues, no. So I'm just letting you know that for purposes of discretion, these convictions were influential in DHS's decision. So we have five separate incidents that gave rise to seven charges, seven convictions. Well, and he got dishonorably discharged of the drugs. Right. So, I mean, it's his position that basically he became a drug addict when he was serving overseas? I can't really answer that. I'm not really sure what his position is on his drug activity. I'm not sure it's even accurate to call him a drug addict because of their distribution charges. So I wouldn't be comfortable saying that. It wouldn't be the first time in our experience that an addict sold drugs in order to fund his or her own habit. But we're totally speculating. Right. Okay. What else you got for us? Well, in short, Padilla is a criminal case, so it does not alter the rule that convictions cannot be collaterally attacked. I have a question on that. We know what the case law is on that, but does that make it a jurisdictional issue? Is it a dismiss or is it a deny? Because the cases don't exactly say They stand for the proposition that you can't do it. Right. But is it a jurisdictional issue, say, like hardships? Can I just take a look at the charge of removability in the record? Sure. We like to have informed answers. Okay. I hadn't actually thought of that decision. So he was charged as an aggravated felon under the controlled substance removability charge. So that would be 1252A2C, which requires dismissal for lack of jurisdiction. Arguably, this is a constitutional claim. So we have to look at it.   Okay. Right. But I think ultimately it's a dismissal for lack of jurisdiction because the constitutional claim is not really viable. And as you mentioned, of course, Mr. Coombs can only naturalize through birth or full naturalization. So he is not a U.S. national. And if the court has no further questions, the government rests on the briefs and the filings. Thank you very much, Ms. Anton. Mr. Barton, I think I'll give you a minute on rebuttal. Yes, Your Honor. I do believe you correctly noted that those other convictions were outside the scope of the record. We won't consider them. Thank you. If the court ends up going down the road of recognizing the Daniel exception, I do believe there's other three independent basis for a Sixth Amendment claim here that I just want to briefly raise with the court. The failure to mitigate harm in the plea deal, which is Glover v. U.S. 531 U.S. 198. Mr. Coombs could apply it to any number of non-deportable charges, but his attorney failed to recognize that. Failure to investigate law and facts relevant to the client, Williams v. Taylor 529 U.S. 362 and Wiggins v. Smith 539 U.S. 510 and that Mr. Coombs' counsel failed to investigate his citizenship status and, again, the misrepresentation of counsel. Mr. Coombs could not have had a subjective belief that he was a U.S. national had his attorney been giving him the correct advice. Mr. Barton, thank you. And again, on behalf of the court, we thank you and the firm for taking the case on a pro bono basis. My pleasure. Thank you. The case just argued is submitted.
judges: Tallman, Clifton, Callahan